FILED
U.S. District Court
District of Kansas

02/18/2026

Clerk, U.S. District Court
By: SND Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BORIS PHILIP KASSAP, )
)
    Petitioner, )
v. ) Case No. 25-3277-JWL
)
C. CARTER, Warden, FCI-Leavenworth; )
TODD LYONS, ICE Acting Director; )
Secretary, Department of Homeland Security; )
and PAMELA BONDI, Attorney General, )
)
    Respondents. )
)
_____)

## **MEMORANDUM AND ORDER**

  Petitioner, acting *pro se*, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **February 27, 2026**, and shall provide notice to this Court when that release is effected.

  Petitioner, a native of the former Soviet Union, was admitted to the United States in 1990 and became a lawful permanent resident in 1996. On May 10, 2024, he was taken into custody by immigration officials, who initiated removal proceedings. On September 13, 2024, an immigration judge ordered petitioner's removal. Petitioner is presently detained within this judicial district. On December 29, 2025, petitioner filed the instant habeas action; respondents have filed a response to the petition, petitioner has filed a traverse, and the matter is therefore ripe for ruling.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). As the parties agree, petitioner's removal period began in October 2024, when his removal order became final after the expiration of the 30-day appeal period. *See id.* § 1231(a)(1)(B)(i). Specifically, petitioner claims that his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should

2

> hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D. Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." Most significantly, petitioner has not been removed despite having been detained for *more than 16 months* since the start of the removal period – a significant period of time beyond the six-month period deemed presumptively reasonable by the Supreme Court – and *more than 21 months* overall.  In opposing the petition, respondents cite the statutory provision that states that the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *See* 8 U.S.C. § 1231(a)(1)(C).  Relying on that provision, respondents argue that petitioner's removal period should be deemed tolled because of his noncooperation, based on their evidence that "[a]s recently as February 19, 2025, Petitioner failed to cooperate with ICE efforts to remove him by refusing to sign travel documents to Russia."  That evidence also reveals, however, that the document request paperwork was completed, and there is no evidence of any noncooperation by petitioner after February 2025; thus, respondents have mischaracterized the evidence by describing any noncooperation as "recent".  Even if the Court were inclined to toll the six-month presumptive period on this basis, it would do so only until February 2025, and *one year* has passed since then without petitioner's removal.  The Court thus finds that petitioner has met his initial burden under *Zadvydas*.

The Court further finds that respondents have not rebutted that showing. The declaration submitted by respondents states that a document request was completed for Russia by local officials and sent to ICE headquarters for review in June 2025; but the declaration does not state that the request was ever actually sent to Russian officials, stating instead that the request "remains pending at this time." Even if the request were in fact sent to Russian authorities, there has apparently been no response for many months, and neither the declarant nor respondents provide any reason to believe that Russia will accept petitioner in the near future. The declaration also reveals that officials sent a request to Moldovan authorities in January 2025, based on a possibility that petitioner was born in Moldova; but that country informed officials in May 2025 that petitioner would need to apply for Moldovan citizenship before that country would consider accepting him, and in November 2025, local officials were told that the State Department has not found a third country for removal of Moldovan citizens. Neither the declarant nor respondents have identified an alternative country to which they believe petitioner might be removed in the future. Most significantly, respondents have not even attempted to explain why efforts to remove petitioner are likely to be successful in the reasonably foreseeable future.

In sum, respondents have not been able to provide evidence or even point to any specific fact that creates a significant likelihood that, even though officials have been unable to remove petitioner since his removal order became final in October 2024, and even though their efforts to remove him to two specific countries have failed, petitioner will nonetheless be removed in the reasonably foreseeable future. Petitioner's detention

has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision. *See Zadvydas*, 533 U.S. at 700.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **February 27, 2026**.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **February 27, 2026**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 18th day of February, 2026, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge